UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Allen Rheaume,

      Plaintiff,

      v.                                    Civil Action No. 2:15-cv-135-wks-jmc

Andrew Pallito, Mark Potanas,
Cullen Bullard, Kris Goldstein,
Samantha Clarke, Kim Bushey,
Jim Gibson, Dale Crook,
Larry Martineau, Tammy
Kennison, and Brad Dunsmore,

      Defendants.

## REPORT AND RECOMMENDATION
(Docs. 6, 7, 47)

      Plaintiff Allen Rheaume, a Vermont inmate proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983, seeking compensatory and punitive damages against Defendants Andrew Pallito, Mark Potanas, Cullen Bullard, Kris Goldstein, Samantha Clarke, Kim Bushey, Jim Gibson, Dale Crook, Larry Martineau, Tammy Kennison, and Brad Dunsmore, employees of the Vermont Department of Corrections (DOC). Rheaume alleges that Defendants violated his First and Fourteenth Amendment due process rights under the United States Constitution by unlawfully denying him access to sex offender treatment programming and community release, in retaliation for Rheaume's prior litigation against DOC employees.

Now pending before the Court are Rheaume's motion for injunctive relief (Doc. 6), Rheaume's motion for appointment of counsel (Doc. 7), and Defendants' motion to dismiss Rheaume's First Amended Complaint for failure to state a claim (Doc. 47).

## Factual and Procedural Background

Rheaume was convicted of lewd and lascivious conduct and is serving a life sentence as a habitual offender. *See Rheaume v. Pallito*, Civil Action No. 5:11-cv-72, 2012 WL 6642706, at *1 (D. Vt. Nov. 15, 2012). As stated in a 2011 Vermont Supreme Court decision, Rheaume "has forty-eight convictions, five of which either involve sex crimes or have a sexual element. He also has had sixty-three disciplinary report convictions while incarcerated." *Rheaume v. Pallito*, 2011 VT 72, ¶ 3, 190 Vt. 245, 30 A.3d 1263. In 2007, the Vermont Department of Corrections' Sex Offender Review Committee designated Rheaume a high-risk sex offender pursuant to 13 V.S.A. § 5411b(b). *Id.*

On June 4, 2015, Rheaume filed the initial Complaint in this matter, together with an application to proceed *in forma pauperis*. (Docs. 1, 5.) Days later, Rheaume filed a "Motion for an Injunction Order to Allow [Him] Enrollment into the VTPSA (Sex Offender Program) Immediately." (Doc. 6.) On July 7, 2015, Rheaume filed a First Amended Complaint. (Doc. 10.) Therein, Rheaume alleges that he has been eligible for entry into the Vermont Treatment Program for Sexual Abusers (VTPSA), a prerequisite for parole, since his minimum release date of January 30, 2008; but that Defendants unlawfully denied his eligibility for the Program by arbitrarily designating him as a Level C Offender. (*Id.* at 4–6.) This, according to Rheaume, was despite a DOC psychologist's "positive recommendation" that Rheaume complete the VTPSA. (*Id.* at 5.) Rheaume alleges that

2

Defendants have violated his Fourteenth Amendment substantive and procedural due process rights by not allowing him to participate in the VTPSA (*id.* at 7), and his First Amendment rights by retaliating against him "for his prior state . . . and federal court litigation[s] against some of the . . . defendants in this case and [other] [ ]DOC [o]fficials" (*id.* at 8). Rheaume also alleges that Defendant Pallito is liable for failure to train and properly supervise the remaining Defendants. (*Id.*)

Defendants have moved to dismiss Rheaume's First Amended Complaint on the following grounds: (1) Rheaume's official-capacity claims seeking monetary damages against Defendants are barred by Eleventh Amendment sovereign immunity; (2) Rheaume fails to allege facts sufficient to show that Defendants Commissioner Pallito and Superintendent Potanas were personally involved in the alleged unlawful conduct; (3) Rheaume fails to allege a violation of a constitutional right; and (4) Rheaume fails to allege facts sufficient to satisfy the elements of a punitive-damages claim under § 1983. (Doc. 47.) A few days after Defendants' motion to dismiss the First Amended Complaint was filed, Rheaume filed a motion to amend the First Amended Complaint to name an additional DOC employee, Brad Dunsmore, as a defendant. (Doc. 49.)

On October 20, 2015, the Court granted Rheaume's motion to amend the First Amended Complaint (Doc. 49) pursuant to "th[e] liberal standard for amending pleadings." (Doc. 56) The Court explained that "[n]either the existing parties nor the proposed new Defendant will be prejudiced, as meaningful discovery has not yet been conducted," and "there is no indication of undue delay in Rheaume's seeking leave to amend." (*Id.* at 2

3

(citing F.R.C.P. 15(a)(2)).)  On the same date, Rheaume's proposed Second Amended Complaint (Doc. 49-1) was filed.  (Doc. 57.)

When, as here, a plaintiff amends his complaint while a motion to dismiss is pending, "the court . . . has a variety of ways in which it may deal with the pending motion [to dismiss], from denying the motion as moot to considering the merits of the motion in light of the amended complaint."  *Roller Bearing Co. of Am. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008) (second alteration in original) (internal quotation marks omitted).  "Where the proposed amendment requires leave of court, the preferred course is to grant leave to amend *even if doing so renders moot the motion to dismiss*, rather than granting the motion to dismiss and rendering moot the motion for leave."  *Id.* (emphasis added) (citing *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002) (reversing district court's denial of motion for leave to amend complaint and holding that motion for leave rendered moot pending motion to dismiss rather than vice versa)).  In light of the filing of Rheaume's Second Amended Complaint, which added a new Defendant, I recommend that Defendants' motion to dismiss Rheaume's First Amended Complaint (Doc. 47) be DENIED as moot.

Furthermore, I recommend that Rheaume's motion for injunctive relief (Doc. 6) be DENIED because, as explained below, Rheaume has failed to show that he will be irreparably harmed if he is not enrolled in sex offender programming "immediately" (*id.* at 13).

"[P]reliminary injunctive relief is an extraordinary remedy and should not be routinely granted."  *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986).  "In general, to secure a

4

preliminary injunction, the moving party must demonstrate: (1) irreparable harm, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (internal quotation marks omitted). Unlike the standard on a motion to dismiss, when considering a motion for a preliminary injunction, "the [c]ourt need not accept as true the well-pleaded allegations in [the p]laintiffs' complaint." *Victorio v. Sammy's Fishbox Realty Co., LLC*, No. 14 Civ. 8678(CM), 2014 WL 7180220, at *4 (S.D.N.Y. Dec. 12, 2014) (citing *Incantalupo v. Lawrence Union Free Sch. Dist. No. 15*, 652 F. Supp. 2d 314, 317 n.1 (E.D.N.Y. 2009) *aff'd*, 380 F. App'x 59 (2d Cir. 2010)). Moreover, where–as here–the requested injunction will alter, rather than maintain, the status quo, the movant faces a more rigorous standard: he must make "a clear showing that the moving party is entitled to the relief requested, or [that] extreme or very serious damage will result from a denial of preliminary relief." *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (internal quotation marks omitted).

The Second Circuit has held that "[a] showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks omitted). To establish irreparable harm, the movant must demonstrate "an injury that is neither remote nor speculative, but actual and imminent[,] and that cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (internal quotation marks omitted).

Here, Rheaume claims that Defendants' "continu[]ous denial of [his] entry into the VTPSA program for a period of seven years" has caused him irreparable harm. (Doc. 6 at 1.) Rheaume's argument for injunctive relief rests on the assumption that, when and if he attends sex offender programming, he will be granted parole; and thus he suffers irreparable harm as the days pass and he is incarcerated rather than released on parole. But Rheaume has not demonstrated that he would be paroled when and if he attends sex offender programming. Under the applicable Vermont statute, an inmate may be released on parole only if "there is a reasonable probability that the inmate can be released without detriment to the community or to the inmate." 28 V.S.A. § 502a(b)(2). As noted above, the Vermont Supreme Court stated in a 2011 decision that Rheaume has 48 convictions, five of which either involve sex crimes or have a sexual element, and 63 disciplinary report convictions while incarcerated. *Rheaume*, 2011 VT 72, ¶ 3. The Supreme Court also stated that, in 2007, the DOC's Sex Offender Review Committee designated Rheaume a "high-risk sex offender" under the applicable statute. *Id.* A December 26, 2014 letter from Defendant Commissioner Pallito to Rheaume states that, "given [Rheaume's] level of risk based on current assessments[,]" his eligibility for the VTPSA was "being delayed[,] as any release will pose an imminent risk to public safety." (Doc. 8-8; *see also* Doc. 8-6.)[1] Thus, even if Rheaume was eligible for and attended the VTPSA, Rheaume has not established that it is likely he would be paroled, given his assessed risk to the community. The cases cited by Rheaume in support of his claim for injunctive relief are distinguishable, as they address claims brought by inmates who were objecting to the requirement that they complete sex

---

[1] Documents 8-6 and 8-8 were filed by Rheaume, in support of his initial Complaint in this matter.

offender programming because they had not been adjudicated to be sex offenders.  (*See* Doc. 6 at 9.)  Here, Rheaume–an adjudicated sex offender–is objecting to the DOC's *denial* of his enrollment in sex offender programming.

Accordingly, I recommend that Rheaume's motion for injunctive relief (Doc. 6) be DENIED, as Rheaume has not met his heavy burden of showing that Defendants' failure to enroll him in the VTPSA is resulting in an actual and imminent harm, rather than merely a speculative one.  Absent a finding of irreparable harm, there is no need to consider whether Rheaume has established a likelihood of success on his claims.  *See, e.g.*, *Jayaraj v. Scappini*, 66 F.3d 36, 38–39 (2d Cir. 1995).

I also recommend that Rheaume's "Motion for Appointment of Counsel for the Injunctive Relief Requested" (Doc. 7) be DENIED.  "A party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Conn. State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011).  Nevertheless, the court may ask an attorney to represent an indigent litigant pursuant to 28 U.S.C. § 1915(e)(1).  Congress has not appropriated funds, however, to pay an attorney or even to reimburse his or her expenses, should he or she accept such an appointment.  *Clarke v. Blais*, 473 F. Supp. 2d 124, 125 (D. Me. 2007).  "As a result, [these] appointments occur very rarely, being saved for cases that appear to have some chance of success."  *Id.* (footnote omitted).

The Second Circuit has laid out a framework for determining whether counsel should be appointed for indigent litigants in civil cases.  *Hodge v Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986).  As a threshold requirement, a court must determine whether the indigent's claim "is likely one of substance."  *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632

7

(2d Cir. 2001). "[E]ven though a claim may not be characterized as frivolous, counsel should not be appointed in a case where the merits of the indigent's claim are thin and his chances of prevailing are therefore poor." *Id.* Moreover, even if the court determines that "the indigent's position seems likely to be of substance," the court should also consider the following factors: "the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues[,] and any special reason . . . why appointment of counsel would be more likely to lead to a just determination." *Hodge*, 802 F.2d at 61–62.

Here, Rheaume has demonstrated at this early stage of these proceedings that he has the ability to investigate crucial facts and to appropriately present his case. Moreover, Rheaume has not shown that there is conflicting evidence which implicates the need for cross-examination, or any other special reason warranting the appointment of counsel. Accordingly Rheaume's motion for appointment of counsel (Doc. 7) should be DENIED.

For these reasons, I recommend that Defendants' motion to dismiss Rheaume's First Amended Complaint (Doc. 47) be DENIED as moot, Rheaume's motion for injunctive relief (Doc. 6) be DENIED for failure to show irreparable harm, and Rheume's motion for appointment of counsel (Doc. 7) be DENIED for failure to demonstrate a special reason for such appointment.

Dated at Burlington, in the District of Vermont, this 22nd day of October, 2015.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

8

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. See Fed. R. Civ. P. 72(a); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).